**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:10cv244
[Criminal Case No. 1:06cr43]**

| | | |
|---|---|---|
| **ROBERT BLAKE KELLER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner's Motion under 28

U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody [Doc. 1-1] and the Government's Motion for Summary

Judgment [Doc. 6].

**I.     FACTUAL AND PROCEDURAL HISTORY**

On June 5, 2006, the Petitioner, along with four co-defendants, was

charged in a bill of indictment with conspiracy to possess with intent to

distribute at least 500 grams of a methamphetamine mixture and at least 500

grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841 and 846.

[Criminal Case No. 1:06cr43, Doc. 1]. The conspiracy was alleged to have been committed from in or around January 2003 through the date of the indictment. [Id.]. On September 6, 2006, the Petitioner entered into a written plea agreement with the Government whereby he agreed to plead guilty to the conspiracy and to be held responsible for between 500 grams and 1.5 kilograms of methamphetamine mixture. [Id., Doc. 78]. Also as part of this plea agreement, the Petitioner agreed to waive his right to appeal except for claims of ineffective assistance of counsel and/or prosecutorial misconduct. [Id. at 5]. On September 15, 2006, the Honorable Dennis L. Howell, United States Magistrate Judge, conducted a plea hearing and colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure and accepted the Petitioner's guilty plea. [Id., Doc. 84].

The Probation Office submitted a Presentence Report ("PSR") in preparation for Petitioner's sentencing hearing, which report was revised on May 21, 2007. [PSR at 1].[1] The Offense Conduct section of the PSR summarizes Petitioner's activities in furtherance of the conspiracy, including Petitioner's role as primary supplier of methamphetamine to the conspiracy. [Id. at 4]. According to the PSR, on December 6, 2004, Burke County Sheriff's

---

[1]The Presentence Report, which is sealed, is not included on the docket sheet for the case and was not assigned a docket number. In citing to the revised report, the Court therefore will simply cite to it as the "PSR."

Department officers responded to Petitioner's business, Keller Motor Company in Glen Alpine, North Carolina, after receiving a report of a fight involving a firearm at the business. [Id.]. Upon their arrival, officers witnessed Petitioner run into a restroom inside the business and dump a bag of methamphetamine into the toilet, from which officers were able to collect .45 grams. [Id.].

The PSR further recounts that law enforcement used confidential informants to purchase methamphetamine from the Petitioner on multiple occasions. [Id. at 4-5]. Specifically, confidential informants were used to purchase methamphetamine mixtures from Petitioner on December 17, 2004, January 26, 2005, and February 8, 2005. [Id.]. Following the last of these transactions, officers attempted to stop Petitioner's vehicle. [Id.]. Petitioner failed to comply with the officers' use of blue lights and sirens, drove through two stop signs, and stopped his car only when he was cut off by a police vehicle. [Id.]. During the ensuing traffic stop, officers found the money paid by the confidential informant on Petitioner's person, as well as 66.8 grams of methamphetamine in his vehicle. [Id.]. Petitioner confessed at this time to selling methamphetamine as well as providing items to an unindicted co-defendant so that she could cook methamphetamine. [Id.].

On July 20, 2005, law enforcement officers executed a search warrant

at Petitioner's residence in Glen Alpine, North Carolina. During the search, officers found in the basement and in Petitioner's bedroom a quantity of marijuana and pills, a smoking device, a ledger paper containing drug amounts and prices, a surveillance camera and monitor, a night vision device, and a gun case containing a loaded Beretta .22 caliber semi-automatic pistol. [Id. at 5-6].[2]

On August 15, 2005, police officers found methamphetamine in the pocket of a man who had just left Petitioner's vehicle. Petitioner ignored the officers and drove away. [Id. at 6]. After a high speed chase on I-40 officers found cash and a pipe containing methamphetamine residue in Petitioner's vehicle. [Id.]. The person with whom the officers had seen Petitioner conducting the suspected drug deal that day was interviewed later and confirmed that he had been purchasing small amounts of methamphetamine from Petitioner for six months. [Id.].

Petitioner was stopped for traffic offenses on I-40 on September 10, 2005. At that time, officers located $2,950 in cash, as well as four containers of butane lighter fluid, a precursor used in the manufacturing of methamphetamine, in the vehicle he was driving. [Id.]. Petitioner claimed that

---

[2]In an Addendum to the PSR, the Probation Officer clarified that the Beretta pistol, ammunition, the night vision device, and the surveillance cameras were all located in Petitioner's bedroom. [Id. at 16].

the automobile belonged to one of his customers and denied that the money was his. [Id.].

In yet another traffic stop on October 15, 2005, Petitioner stopped his car abruptly and ran into a tire business, where he threw an object into a stack of tires before being apprehended by law enforcement. [Id.]. An officer found a plastic container with five baggies holding a total of 12.9 grams of methamphetamine. [Id.]. They also found $4,240 in cash in the passenger compartment of the automobile, along with a Smith & Wesson .38 caliber revolver in the trunk of the automobile. [Id.].

On January 26, 2006, Petitioner sold a gram of methamphetamine to a confidential informant, and the transaction was recorded electronically. [Id.].

On May 14, 2006, officers found more methamphetamine in an automobile that they stopped as it was leaving Petitioner's residence in Morganton, North Carolina (Petitioner apparently having moved from his former residence in Glen Alpine). The occupants of the automobile told police that Petitioner sold them the drugs. [Id. at 7]. The next day, officers searched Petitioner's home in Morganton. In an Igloo cooler found in the backyard of the residence, officers found six smoking devices, five quart-size baggies containing methamphetamine residue, additional baggies and a ball of electrical tape together containing a total of over 173 grams of

methamphetamine, another ball of electrical tape containing 21.4 grams of marijuana, and a baggie containing a cutting agent, digital scales, and rolling papers.  [Id.].  In the basement of the residence, officers located a Marlin rifle and a Stevens rifle, two 300 ml bottles of butane lighter fluid, a glass smoking device, digital scales, a night vision system, and a security camera and cable over the garage door leading to the basement.  [Id.].  In a bedroom, officers found three more sets of digital scales, a loaded Taurus .380 semi-automatic pistol in a holster, a Ruger .22 caliber revolver, an Interarms .22 caliber rifle, a 12-gauge shotgun, $1,170 in cash, two walkie-talkies, payment logs, and various controlled substances, including Ecstasy and Valium.  [Id.].

While noting that the investigation indicated that Petitioner was responsible for distribution of more than 1.5 kilograms of methamphetamine mixture and over 130 grams of actual methamphetamine, the Probation Officer calculated Petitioner's base offense level to be 32, based on a drug quantity attributable to Petitioner of between 500 grams and 1.5 kilograms of methamphetamine mixture, consistent with the parties' plea agreement.  [Id. at 8].  The Probation Officer recommended a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) based upon Petitioner's possession of a dangerous

weapon[3] during the conspiracy offense and a three-level reduction for acceptance of responsibility, yielding a total offense level of 31. [Id. at 8-9]. With a relevant criminal history category of I, the Probation Officer calculated a preliminary Sentencing Guidelines range of imprisonment of between 108 and 135 months. [Id. at 13-14]. Because 21 U.S.C. § 841(b)(1)(A) subjected Petitioner to a mandatory minimum term of 120 months, however, U.S.S.G. § 5G1.1(c)(2) limited the range to 120-135 months' imprisonment. [Id. at 14]. Had the drug quantity not been limited to the amount jointly recommended pursuant to the plea agreement, Petitioner's applicable range would have been between 135 and 168 months. [Id.].

Petitioner's counsel filed two objections on April 27, 2007. Counsel first objected to Paragraph 12 of the PSR, arguing that the gun in the gun case located in the Glen Alpine residence during the July 20, 2005 search was neither in Petitioner's bedroom nor near any controlled substances. [Id. at 16]. Second, counsel objected to Paragraph 15, arguing that the gun found during the October 15, 2005 traffic stop had been locked in the trunk and was not in the passenger compartment, and that the gun was owned by and titled to Petitioner's father. [Id.]. The Probation Officer disputed the first objection,

---

[3]The weapons specified in the PSR were the Beretta pistol found during the July 20, 2005 search of Petitioner's Glen Alpine residence; the pistol found in the car trunk during the October 15, 2005 traffic stop, and the rifles, pistols and shotgun found during the May 15, 2006 search of Petitioner's Morganton residence.

noting that the officers who conducted the search of Petitioner's Glen Alpine residence reported that the pistol in question was found in Petitioner's bedroom, along with ammunition, a night vision device, surveillance cameras, and a cellular telephone. Accordingly, the Probation Officer recommended that Paragraph 12 remain as written. [Id.]. The Probation Officer agreed with the second objection and therefore revised PSR Paragraph 15 to reflect the location and ownership of the weapon. [Id.]. The Probation Officer further noted that Petitioner did not object to the Probation Officer's report of other weapons found with illegal drugs and paraphernalia during the May 15, 2006 search of Petitioner's Morganton residence. [Id. at 17].

The Honorable Lacy H. Thornburg, United States District Judge, held Petitioner's sentencing hearing on June 25, 2007. Petitioner was represented by attorney Jack Stewart at sentencing. The Court accepted Petitioner's guilty plea, based upon the parties' stipulation that there was a factual basis for the guilty plea and that the Court could accept the evidence contained in the PSR as establishing such a factual basis. [Criminal Case No. 1:06cr43, Doc. 139 at 2-4]. Both Petitioner and his counsel confirmed that Petitioner had reviewed the PSR and understood its contents. [Id. at 3].

With respect to the objections to the PSR, defense counsel informed the Court that both of these objections stemmed from conversations with the

Petitioner, and that it was "not [counsel's] intention to file these objections to otherwise affect the calculations of the guidelines. Both objections had to do with the location of weapons that were seized at or about the time of [Petitioner's] arrest." [Id. at 4]. Counsel further observed that the objection regarding the location and ownership of the pistol found during the October 15, 2005 traffic stop, had been adopted and the PSR had been amended. [Id. at 4]. Counsel stated his opinion that the objections did not change the guidelines calculation, but that it was something important to Petitioner to raise. [Id.]. Counsel asked that the pistol recovered during the October 15, 2005 traffic stop be returned to its "rightful, lawful owner," Petitioner's father. [Id. at 5]. When the Court asked counsel if he wished to be heard with respect to the objection to the two-level enhancement, counsel replied: "No, sir. No, sir. We do not." [Id.]. The Court adopted the PSR as written. [Id. at 6].

Counsel then addressed the Court, discussing Petitioner's reference and recommendation letters, background, family history, record, and substance abuse problems. [Id. at 6-10]. When the Court asked Petitioner if he had anything to say, he responded: "Yes, sir. I apologize to you and the government and what I did to my family and the law. I'm really sorry. Thank you, sir." [Id.]. The Court sentenced Petitioner to the statutory mandatory minimum term of 120 months' imprisonment. [Id. at 12]. Judgment was

entered on July 3, 2007. [Id., Doc. 120].

Petitioner did not appeal, but filed a motion to vacate his sentence under 28 U.S.C. § 2255 on July 2, 2008, claiming that his counsel failed to file a notice of appeal when requested to do so. [Id., Doc. 140]. The Court granted Petitioner's motion to vacate pursuant to United States v. Peak, 992 F.2d 39 (4th Cir. 1993), and entered an amended judgment on July 11, 2008, deeming Petitioner to have timely filed a notice of appeal from that Judgment. [Docs. 142, 143].

The Fourth Circuit affirmed Petitioner's sentence on June 22, 2009, on the grounds that Petitioner had waived his right to appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct, and that the ineffective assistance claim he had raised was "not cognizable on direct appeal because counsel's ineffectiveness [did] not conclusively appear on the face of the record." United States v. Keller, 327 F. App'x 395, 396 (4th Cir. 2009) (per curiam). The Supreme Court denied certiorari on October 5, 2009. Keller v. United States, __U.S.__, 130 S.Ct. 336, 175 L.Ed.2d 222 (2009).

Petitioner timely filed a motion under 28 U.S.C. § 2255 on September 29, 2010. The Court received the petition on October 4, 2010, but the Clerk's Office, mistakenly believing it to be a successive petition, rejected it. On October 19, 2010, Petitioner, now represented by counsel, moved to refile his

petition along with an amended memorandum of law. [Docs. 1, 2]. The Court

ordered the Government to respond to Petitioner's request that his petition be

treated as though it had been timely filed on September 29, 2010. The

Government filed a response, indicating that it had no objection to Petitioner's

request. [Doc. 3]. The Government then moved for summary judgment as to

Petitioner's claims. [Doc. 6].

In his petition, Petitioner asserts two claims for relief, each based upon

a claim of ineffective assistance of his counsel at sentencing. First, Petitioner

alleges that counsel was ineffective for not sufficiently challenging the

application of the firearm enhancement of U.S.S.G. § 2D1.1(b)(1). Second,

Petitioner alleges that counsel was ineffective for failing to argue for the

application of the safety valve provision, U.S.S.G. § 5C1.2 and U.S.C. §

3553(f). [Docs. 1-1, 2]. The Court will address each of these arguments in

turn.


## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment

a    matter of law." Fed. R. Civ. P. 56(a). The movant has the "initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

Once the movant satisfies this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3, 106 S.Ct. 2548 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment, but rather must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Id. at 255, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, __ U.S. __, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (citation omitted).

## III.  DISCUSSION

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by such constitutionally deficient representation.  Strickland v. Washington, 466 U.S. 668, 687-91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In measuring counsel's performance, there is "a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance."  Id. at 689, 104 S.Ct. 2052.

To demonstrate prejudice, a petitioner must show a probability that the alleged errors worked to his "actual and substantial disadvantage, infecting his trial with error of constitutional dimensions."  Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397  (1986) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).  Under these circumstances, a petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of the State of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).  Therefore, if a petitioner fails to meet this burden, a "reviewing court need not consider the performance prong."  Id. (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052).

In considering the prejudice prong of the analysis, the Court must not grant relief solely because a petitioner can show that, but for counsel's

performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

There is a presumption that counsel was competent, and a petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption. Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). The presumption of competency is not overcome by conclusory allegations. Id. A petitioner who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Where a guilty plea has been entered, a petitioner must show not only that his counsel's performance was deficient but that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Fields, 956 F.2d at 1297 (citation omitted). Here, because Petitioner's challenges counsel's performance at sentencing, he must at a minimum allege facts which establish that his "sentence would have been more lenient" absent counsel's errors. Royal v. Taylor, 188 F.3d 239, 248-49 (4th Cir. 1999).

In the present case, Petitioner argues that counsel was ineffective for failing to make a sufficient challenge to the application of the firearm enhancement. Specifically, Petitioner argues that counsel was ineffective when he withdrew the objection to the enhancement, allegedly without the advice of Petitioner. [Doc. 2 at 6]. Petitioner further argues that counsel was ineffective in failing to allow Petitioner and Petitioner's father to testify that the gun found in the vehicle belonged to Petitioner's father, and that the guns found at the Morganton residence were not used or possessed in connection with drug activity, but rather belonged to the family. [Id. at 7]. Petitioner claims that these actions prejudiced him because absent counsel's deficient conduct "it is more likely than not that the Court would have concluded that it was clearly improbable that the weapons were possessed in connection with the offense of conviction." [Id. at 10].

## A.     Application of the Firearm Enhancement

Section 2D1.1(b)(1) of the United States Sentencing Guidelines increases the Guideline base offense level by two levels when "a dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1) (2006). The application notes state that the "adjustment should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.3 (2006) (emphasis

15

added).  While the Government has the burden of proving that the weapon was possessed, the Petitioner bears the burden of demonstrating the clear improbability that the weapons were connected to his conspiracy offense. See United States v. Harris, 128 F.3d 850, 853 (4th Cir. 1997).  In meeting its burden, the Government need not prove that the firearms were used, but simply that they were possessed during any relevant illegal drug activity. United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001).  The necessary nexus may be established by showing that the weapon was located in the same location "where drugs or drug paraphernalia are stored or where part of the transaction occurred."  United States v. Roederer, 11 F.3d 973, 983 (10th Cir. 1993); see also United States v. Hammer, 3 F.3d 266, 270 (8th Cir. 1993); United States v. Eastland, 989 F.2d 760, 770 (5th Cir. 1993).

In determining whether to apply the firearm enhancement, the Court may consider not only overt conspiratorial acts but also any relevant conduct. "Under relevant conduct principles, the enhancement applies when 'the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction.'" McAllister, 272 F.3d at 233-34 (quoting United States v. Ortega, 94 F.3d 764, 767 (2d Cir. 1996)).  Thus, the Fourth Circuit has held that the sentencing court "must look to the entire course of relevant criminal conduct, not merely

the narrow offense of conviction," in determining whether to apply the enhancement. <u>United States v. Falesbork</u>, 5 F.3d 715, 721 (4th Cir. 1993).

Petitioner first argues that counsel was ineffective when he withdrew the objection to the firearm enhancement without Petitioner's knowledge or consent. The record, however, does not support the Petitioner's contention that this objection was in fact withdrawn. In arguing that counsel withdrew the objection, Petitioner relies on the fact that when the Court asked counsel whether he wished to be *heard* on the two-level enhancement, counsel replied: "No, sir. No, sir. We do not." [Doc. 2 at 6]. Declining to offer oral argument cannot fairly be interpreted as a withdrawal of a written objection. An attorney is well within the realm of his professional judgment when deciding whether an objection has been brought sufficiently to the Court's attention and whether further argument is either necessary or prudent. Petitioner's objection to the factual basis for the application of the firearm enhancement had been raised and properly preserved with the filing of written objections to the PSR, and counsel acted well within his professional judgment in determining that no oral argument was necessary to further advance the issue.

Even if the Court were to accept Petitioner's characterization of counsel's actions, Petitioner cannot show that he suffered any prejudice from

the alleged withdrawal of this objection. The PSR establishes that Petitioner was in possession of various weapons during the course of the three-year conspiracy, and Petitioner has failed to show that it was "clearly improbable" that any of these firearms was possessed in connection with the conspiracy or with his relevant conduct.[4] See U.S.S.G. § 2D1.1 cmt. n.3. For example, during the search of Petitioner's Glen Alpine residence on July 20, 2005, officers found marijuana, drug equipment, and a loaded pistol in a gun case. While Petitioner disputes whether the gun was found in the same room as the other items, he does not dispute that the gun was found in his house. [Doc. 2 at 10-11]. Petitioner further argues that this firearm had "nothing whatsoever to do with the distribution or possession of methamphetamine." [Doc. 9 at 3]. Petitioner, however, ignores the fact that the gun was located in close proximity to marijuana and drug paraphernalia and thus still properly serves as a basis for the enhancement. See Harris, 128 F.3d at 852.

In the search of Petitioner's Morganton residence on May 15, 2006, officers found methamphetamine, marijuana, and various drug paraphernalia in the backyard. The search of the basement of the residence uncovered two rifles, butane lighter fluid, drug paraphernalia, a night vision system, and a

---

[4] The enhancement applies whether a defendant possesses one firearm or many. USSG §2D1.1(b)(1) and n.3.

security camera and cable over the garage door leading to the basement.  In a bedroom, officers found various controlled substances, including Valium and Ecstacy; additional drug paraphernalia, including sets of digital scales; and multiple firearms, including a loaded Taurus .380 semi-automatic pistol in a holster, a Ruger .22 caliber revolver, an Interarms .22 caliber rifle, a 12-gauge shotgun.  The Petitioner contends that the weapons found during this search belonged to his father and were not connected to the charged drug activity.  In so arguing, however, Petitioner overlooks the fact that the enhancement applies to *possession*, not ownership, and that the lack of proximity of these firearms to methamphetamine is irrelevant in light of their proximity to other drugs and paraphernalia that the officers found.[5]

Next, Petitioner claims that if counsel had permitted him and his father to testify, the Court would have determined that several of the firearms were titled to his father, not to Petitioner.  The legal ownership of these weapons, however, is irrelevant.  The firearm enhancement applies to "possession," not "ownership."  It is well-established that an object's ownership by one person does not in any way preclude its possession by another.  See, e.g., United

---

[5]Because the Court finds ample factual basis to support the application of the firearm enhancement based on the firearms found in Petitioner's residences, the Court need not address whether the discovery of the firearm of the trunk of the car during the October 15, 2005 traffic stop also would support application of the enhancement in this case.

States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996); see also United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992). Constructive possession, which may be evidenced solely through the exercise of dominion or control of an object, is adequate to show "possession" for the purpose of the firearm enhancement. See, e.g., Rusher, 966 F.2d at 878; United States v. Armstrong, 187 F.3d 392, 396 (4th Cir. 1999). The location of these firearms in Petitioner's residence and in close proximity to drugs and drug paraphernalia establishes that Petitioner had at least constructive possession over these firearms in connection with Petitioner's relevant drug activity. See Falesbork, 5 F.3d at 720. Therefore, testimony regarding the true legal ownership of the guns would not have changed the applicability of the firearm enhancement to his sentence.

**B.    Application of the Safety Valve Provision**

In Petitioner's second assignment of error, Petitioner alleges that even if the firearm enhancement is applicable, counsel was still ineffective in failing to argue for the application of the safety valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2.[6]  [Doc. 2 at 13].

In support of his argument, Petitioner cites an unpublished district court

---

[6]A defendant is eligible for safety valve relief if the court determines that "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2) (2006).

case, United States v. Clark, No. 7:08-CR-00053, 2009 WL 3125611 (W.D. Va. Sep. 28, 2009). In Clark, the court, relying primarily upon United States v. Blount, 337 F.3d 404 (4th Cir. 2003), concluded that a sentence enhancement pursuant to § 2D1.1(b)(1) did not foreclose application of the safety valve provision where the Government fails to establish that the firearm was possessed "in connection with" the defendant's drug trafficking activities. Clark, 2009 WL 3125611, at *2. While apparently conceding that Clark had not yet been decided at the time of his sentencing, Petitioner nevertheless contends that the authority cited in Clark was available at the time of sentencing, and counsel's performance was constitutionally deficient for failing to cite such authority in support of application of the safety valve. Petitioner further contends that had counsel called Petitioner's father to testify regarding the ownership of the firearms at issue, there is a reasonable probability that his sentence would have been reduced pursuant to the safety valve provision, regardless of the application of the firearm enhancement. [Doc. 2 at 13-16].

To invoke Blount and the other authorities cited in the Clark decision, counsel "would have had to literally repeat his prior arguments about the lack of connection between the [firearms] and the drug charge to which [Petitioner] had pled guilty." United States v. Castro, Nos. 1:09-cr-00523 (LMB), 1:10-cv-01080 (LMB), 2010 WL 3984656, at *4 (E.D. Va. Oct. 6, 2010). The Court

already had rejected such arguments in concluding that the firearm enhancement should apply. Under these circumstances, it simply would have been futile for counsel to argue for the application of the safety valve provision. See id. Even if counsel had advanced such arguments, however, it is highly unlikely that the Court would have reached a different conclusion in this case, given the ample evidence established that Petitioner possessed various firearms in his residences from which he conducted his drug trafficking and manufacturing business, in close proximity to the other accouterments of his trade. As such, Petitioner cannot show he was prejudiced by counsel's conduct is failing to argue or to present testimony in favor of the application of the safety valve provision.

## IV.    CONCLUSION

Upon careful consideration of Petitioner's Motion to Vacate, the record of the prior proceedings, and the relevant legal precedent, the Court finds that Petitioner is not entitled to any relief and therefore his § 2255 Motion must be denied. Because it is clear to the Court that the Petitioner is entitled to no relief, no evidentiary hearing is required. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Court further finds that Petitioner has not made a substantial showing either that the Court's dispositive ruling is debatable or that his §

2255 Motion states a debatable claim of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (when relief is denied on procedural grounds, petitioner must establish both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right). As a result, the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Government's Motion for Summary Judgment [Doc. 6] is **GRANTED**; the Petitioner's Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 1-1] is **DENIED**; and this action is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability. See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

**IT IS SO ORDERED.**

Signed: July 12, 2011

Martin Reidinger
United States District Judge